# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**Eric Harrison,**

      *Plaintiff,*

**v.**                                             Case No. 3:10-cv-430
                                                          Judge Thomas M. Rose

**Greater Dayton Regional Transit Authority**

      *Defendant.*

---

**ENTRY AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT GREATER DAYTON REGIONAL TRANSIT AUTHORITY** (DOCS. 11, 15)**, AND TERMINATING CASE.**

---

Pending before the Court is Defendant Greater Dayton Regional Transit Authority's Motion for Summary Judgment. Doc. 11. Defendant asserts in its Memorandum in Support, Doc. 15, that Plaintiff Eric Harrison cannot prevail on his sole claim: that Defendant violated the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.* Defendant asserts that there is no evidence that it acted with a willful intent to violate the FMLA, and that the two-year statute of limitations for claims other than those involving willful intent bars Plaintiff's claim. Because Plaintiff has no evidence that Defendant willfully violated the FMLA, the Court will grant Defendant's motion.

**I.**      **Background**

Plaintiff Eric Harrison was employed by Defendant Greater Dayton Regional Transit Authority from April 1992 through October 17, 2007, as a bus operator. (Arb. Tr. at 19). During this period, Harrison's mother, Lois Harrison, had serious health problems. From 1998 through

2008 Lois Harrison's physician, Chester K. Robinson, M.D., had certified Harrison to take intermittent leave under the FMLA for his mother's serious health problems. (Harrison Dep. Tr. Ex. 10, 11, 17). The RTA approved Harrison's FMLA leave under its Absence Control Policy. (*Id.*)

The RTA's Absence Control Policy is a "no-fault" policy, meaning that employees are charged with absences anytime they are "not at work when scheduled." (Arb. Tr. at 49-50; Jt. Arb. Ex. 2, at 1). All absences not specifically defined as "non-chargeable" by the Absence Control Policy count against employees as charged absences, regardless of the reason for the absence.

Absences that are approved as FMLA leave are defined as non-chargeable. (*Id.*). Under the policy, employees receive a written reprimand after they incur nine chargeable absences within a rolling twelve-month period. (Jt. Arb. Ex. 2, at 3). Employees receive additional written reprimands and attendance counseling after reaching eleven and thirteen chargeable absences. (*Id.*). Finally, employees who reach fifteen chargeable absences within a twelve-month period are automatically terminated. (Arbitration Tr. at 61; Jt. Arb. Ex. 2, at 3).

Harrison had attendance issues throughout his employment. (Tr. at 103, 226-27). In 2005, Harrison received seven written reprimands. (Harrison Dep. Ex. 3; Harrison Dep. 30-31). On November 16, 2006, Harrison received a reprimand for accumulating nine chargeable absences. (*Id.*). On November 24, 2006, he received another reprimand and attendance counseling for reaching eleven chargeable absences. (*Id.*). On January 22, 2007, Harrison was reprimanded and counseled for reaching thirteen chargeable absences. (*Id.*). At his attendance counseling, Harrison was warned that he was only two chargeable absences away from termination. (*Id.*). Because the twelve-month window was a rolling one, it ceased to consider some of Harrison's older chargeable offenses.

On February 9, 2007, Harrison submitted a new FMLA certification form to the RTA which had been completed and signed by Dr. Robinson. (Harrison Dep. Ex. 10). In relevant part the form indicated that Harrison was his mother's primary care giver and that the "duration and frequency" of Mrs. Harrison's "episodes of incapacity" was fifteen minutes to eight hours per day, three to four days per week. (Harrison Dep. Ex. 10). Harrison provided care for his mother at her home and also transported her to medical appointments. On February 26, 2007, the RTA sent a letter to Harrison requesting that Mrs. Harrison sign a release for the RTA's occupational healthcare provider to contact Dr. Robinson to discuss information pertaining to the certification form. (McEntarfer Dep. Ex. 9)

In March 2007, the RTA transferred responsibility for the administration of FMLA leave to Jean McEntarfer. (McEntarfer Dep. at 8). On March 6, 2007, the RTA sent a copy of the certification form to Dr. Klein, a physician with whom the RTA contracted to review and evaluate employees' FMLA certifications. (McEntarfer Dep Ex. 11). The RTA requested that he review the frequency and duration of leave that Dr. Robinson had indicated was necessary for Mrs. Harrison's care and to provide his opinion as to whether the certification was reasonable. (McEntarfer Dep. Ex. 11). An email message dated March 8, 2007, sent from McEntarfer's predecessor states that Harrison would be approved for intermittent FMLA leave to care for his mother at the same frequency and duration as set forth by Dr. Robinson on the certification form. (McEntarfer Dep. Ex. 12). On March 9, 2007, notice was sent to Harrison confirming that his request for FMLA leave to care for Mrs. Harrison had been approved for fifteen minutes to eight hours per day, three to four days per week. (Harrison Dep. Ex. 13).

From March 9, 2007 through June 21, 2007, Harrison used FMLA leave to care for his mother. (Harrison Dep. Ex. 8, 10). Harrison averaged less than two days of FMLA use per week. (Harrison Dep. Ex. 8). McEntarfer claims to have called Harrison in June 2009 inquiring about his use of intermittent FMLA leave on Fridays.

During this discussion McEntarfer asked Harrison if there had been a change in his mother's condition. According to McEntarfer, Harrison stated that due to his mother being prescribed Coumadin, she had to have lab worked performed, which was falling on Fridays. (McEntarfer Dep. at 57). McEntarfer sent a letter to Harrison dated June 21, 2007.

> The letter contained a clear appraisal and warning:
>
>> On June 1, 2007 RTA sent you a letter inquiring about your FMLA absences for your mother's serious health condition.[1] The type of usage you were experiencing for FML did not seem appropriate for the certification we currently have in your file.
>>
>> You have contacted us by phone[2] and indicated that she may be having a change in her condition, but we have not received any certification that corresponds to a change in the type of leave needed.
>>
>> You have also indicated that you had been scheduling her doctor's appointments for Friday. Please keep in mind that office visits are to be scheduled during non-working hours. If this is not possible, then advance notice, 30 days, must be given to dispatch so you can request to trade days off of switch runs to accommodate her appointments. Failure to give advance notice could result in a delay of FML.
>>
>> Please provide us with any necessary documentation within 15 days.

Doc. 15-3.

---

[1] Harrison denies receiving the June 1 letter.

[2] Harrison asserts that the RTA called him.

From June 21, 2007 through September 6, 2007, Harrison took eight days of FMLA leave. (Harrison Dep. Ex. 16). Harrison next requested FMLA leave on Friday, September 7, 2007, for that same day and on Monday, September 10, 2007, for leave that same day. (Doc. 18-3 at 1-3, McEntarfer Dep. Ex. 16, 17). These same-day leave notices did not comply with the 30-day advance notice requested in the June 21, 2007 letter for doctor's appointments for ongoing treatment.

Harrison's next communication with McEntarfer pertaining to FMLA leave was a letter dated September 10, 2007. (Harrison Dep. at Ex. 27 at 330, Ex. 20, Ex. 21; Doc . 12-1 at 237). Because Harrison was out of town from Friday, September 14, 2007 through Monday, September 17, 2007, ( Doc. 12-1 at 237), he did not open the letter until September 18, 2007.

The letter stated:

> On June 1, 2007, we mailed you an inquiry about the type of absences requested as FML for your mother's condition. You were calling off primarily on Fridays.
>
> On June 21, 2007 you contacted us by phone and indicated that you had been scheduling her doctor's appointments for Friday[s]. We mailed you a letter on June 21, 2007 as a follow up to that call. In that letter we reminded you that for her appointments, you need to provide advance notice. Appointments are considered foreseeable leave. The Department of Labor in the Family and Medical Leave Act of 1993 indicates that an employer can expect advance notice when foreseeable leave is involved. You have not been providing advance notice. The FMLA of 1993 provides that an employer can delay the leave until that requirement is met.
>
> You have called off work, FML for your mother three out of the past four Fridays. It seems that there could be a change in your mother's condition. In the past six months you have called off FML on twenty occasions on either Friday, Monday, or both. You will need to recertify your FML for your mother. It should specifically indicate a requirement to miss work for her care on Fridays and Mondays if that is required. Beginning with September 7, 2007 your absences for your mother's FML will be pending your recertification. The recertification is due in 15 days.

Doc. 15-3 at 149.

Fifteen days from the date of the letter made for a September 25, 2007 deadline by with to submit the recertification. Mrs. Harrison had an appointment with Dr. Robinson scheduled for September 21, 2007 and at that appointment Harrison requested that Dr. Robinson complete the certification form. It was not until October 4, 2007, however, that Harrison returned the certification form to the RTA. (Harrison Sep. Ex. 17).

In the interim, McEntarfer had sent a letter to Harrison dated October 1, 2007, indicating that he did not have FMLA approval for absences taken on September 7, 2007 and September 10, 2007, because he failed to return the certification form to RTA within 15 days of September 10, 2007. (Harrison Dep. Ex. 15). On October 2, 2007, the RTA issued a reprimand to Plaintiff for accumulating 15 chargeable absences during a rolling twelve-month period. (Harrison Ex. 16).

On October 4, 2007, when Harrison provided the FMLA certification form to the RTA, the certification form indicated that the frequency and duration of leave necessary to care for Mrs. Harrison was the same as the frequency and duration set forth in the February 2007 certification form. (Harrison Dep. Ex. 10, 17). The form makes no mention of any specific need to take leave on Friday or Monday. (Harrison Dep. Ex. 17). Harrison also submitted a cover letter from Dr. Robinson which further confirms that Plaintiff's need for leave on Fridays and Mondays was purely coincidental. (Harrison Dep. Ex. 18). After receiving the October 4, 2007 certification form, McEntarfer sent a letter to Plaintiff dated October 5, 2007, which stated that Plaintiff would be approved for intermittent FMLA leave to care for his mother, three to four times per week for periods of fifteen minutes to eight hours, from October 3, 2007 through September 1, 2008. (Harrison Dep. Ex. 19)

However, on October 17, 2007, the RTA terminated Harrison's employment because he accumulated fifteen occurrences under Defendant's absence control policy. (McEntarfer Dep. Ex. 25). But for the events that lead to Harrison's absences on Friday, September 7, 2007 and Monday, September 10, 2007, not receiving FMLA leave status, Harrison's employment would not have been terminated. (McEntarfer Dep. Ex. 25).

On October 18, 2007, Harrison filed a grievance alleging that his termination violated the FMLA. On the grievance form, Harrison specifically indicated that the alleged violation was under the FMLA. (Harrison Dep. Ex. 22; Harrison Dep. 79-80). Harrison confirmed at his deposition that the basis for his grievance was that he believed his September 7, 2007 and September 10, 2007 absences should have been covered under the FMLA. (Harrison Dep. 79-80).

Harrison attended three separate grievance hearings. (Harrison Depo. Exs. 21, 23, 24; Harrison Dep. 79, 86, 90). At each hearing, Harrison and his union representatives claimed that is Friday, September 7, 2007 and Monday, September 10, 2007 absences should have been approved as FMLA leave, and reiterated Harrison's excuse that he did not open his mail until September 18. (*Id.*). Harrison never claimed at any time during the grievance process that the RTA did not have the right to ask him to recertify for FMLA leave; that he made any efforts to submit a timely recertification other than providing the recertification form to his mother's physician on September 21; or that he ever contacted anyone at the RTA to ask for more time to submit a recertification. (Arb. Tr. at 69-71). At each of the grievance hearings, it was determined that Harrison's absences on Friday, September 7, 2007 and Monday, September 10, 2007 were properly coded as chargeable occurrences under the Absence Control Policy, and Harrison's termination was upheld.

After Harrison's termination was upheld at the Step 3 grievance hearing, the final step of the internal grievance process, Harrison and his union elected to seek arbitration regarding his termination.

The arbitration was conducted pursuant to American Arbitration Association rules on September 4, 2008. Both parties had legal counsel and the opportunity to call and cross-examine witnesses. Seven witnesses testified under oath, and a 268-page hearing transcript was produced. (Ex. A). The parties collectively introduced 28 exhibits, including the FMLA Policy, Harrison's FMLA certification, Harrison's attendance records, and the three different letters requesting that Harrison recertify for FMLA leave.

After reviewing the hearing transcript, the exhibits, and the parties' post-hearing briefs, the arbitrator rejected Harrison's claim that the RTA violated the FMLA by charging him with the September 7 and September 10 absences under the Absence Control Policy. The arbitrator held that "pursuant to applicable FMLA regulations and the RTA's FMLA policy, the [RTA] was entitled to require timely recertification of the changing conditions underlying the Grievant's current FMLA certification for his mother and, absent a response from the Grievant, to conclude that doubt had been cast upon the Grievant's stated reason for absence." The arbitrator further determined:

> I find that regardless of when [Harrison] actually opened the September 10 McEntarfer letter, even as late as September 18, the Grievant – who never responded at all to McEntarfer's earlier June 21 request for documentation – did not make a diligent, good faith effort to meet the RTA's reasonably applied deadline for legitimately requested documentation.

(Harrison Dep. Ex. 25; Harrison Dep. 94). The arbitrator concluded that the "record evidence in this case thus compels finding that the RTA properly recorded the September 7 and September 10, 2007

absences as 14th and 15th chargeable absences under the [Absence Control Policy], rather than as FMLA-protected leave. Accordingly, termination was proper and appropriate . . . ."

On October 18, 2010, Harrison filed a complaint in the Montgomery County, Ohio court of Common Pleas alleging that the RTA interfered with his rights under the FMLA and retaliated against him for taking FMLA leave. On November 16, 2010, Defendant removed the matter to this Court, asserting federal question jurisdiction. At the completion of discovery, Defendant filed the motion for summary judgment that is currently under review.

## II. Summary Judgment Standard

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The analysis now turns to the merits of the RTA's motion for summary judgment.

**III.    Analysis**

Plaintiff Eric Harrison has asserted two claims against Defendant the Greater Dayton Regional Transit Authority: one for interference with and violation of rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, and another for unlawful retaliation and violation of rights under the FMLA. The FMLA creates an entitlement "to a total of 12 workweeks of leave during any 12-month period for…[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a). Under certain conditions, the employee may take the 12-week allotment of FMLA leave intermittently or by working a reduced schedule. 29 U.S.C. § 2612(b).

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right that [the FMLA] affords." 29 U.S.C. § 2615(a)(1). The FMLA also provides a statute of limitations that varies, depending upon the intent of the alleged violator:

> (1) In general
> Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.
>
> (2) Willful violation
> In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

29 U.S.C. § 2617(c).

Harrison was terminated on October 17, 2007, and filed his Complaint three years later on October 18, 2010. (Harrison Dep. Ex. 20, at 2; Complaint at 1). Thus, in order to avoid summary

judgment, Harrison must establish a genuine issue of material fact regarding whether the RTA committed a willful violation of the FMLA.[3] To accomplish this Harrison must present evidence that the RTA acted "with knowledge that its conduct [was] prohibited by the FMLA or with reckless disregard of the FMLA's requirements." See *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004); see also *Coffman v. Ford Motor Co.*, 719 F. Supp.2d 856, 868 (S.D. Ohio 2010) (observing that a willful violation cannot be established solely with evidence of a defendant's negligence).

Under the FMLA, an employer has the right to request that an employee recertify for FMLA leave "on a reasonable basis." 29 U.S.C. § 2613(e); see also 29 C.F.R. § 825.308; *Wellman v. Sutphen Corp.*, 2010 WL 1644018, at *7 (S.D. Ohio Apr. 23, 2010). Department of Labor regulations describe the circumstances under which an employer may request that an employee recertify for FMLA leave. See 29 C.F.R. § 825.308; *Wellman*, 2010 WL 1644018, at *7. An employer is authorized to seek recertification, for example, when the "circumstances described by the previous certification have changed significantly," or when the employer "receives information that casts doubt upon the employee's stated reason for the absence or the continuing validity of the certification." 29 C.F.R. § 825.308(c)(2)-(3); *Parsley v. City of Columbus, Ohio Dept. of Public Saftey*, 471 F. Supp. 2d 858, 862-63 (S.D. Ohio 2006).

The Department of Labor has recognized that a "Friday/Monday absence pattern" can constitute information that casts doubt upon an employee's stated reason for absences, especially when there is no evidence that provides a medical reason for the timing of such absence. See DOL Op. Ltr., FMLA 2004-2-A, at 1 (May 25, 2004) (Doc. 15 Ex. E).

---

[3]Defendant does not assert that October 18, 2010 is not within three years of October 17, 2007.

Harrison does not dispute that he had a pattern of using FMLA leave on Fridays and Mondays. (Harrison Dep. 55-56). Harrison admits that he worked only five of thirteen scheduled Friday shifts from March to June 2007; that he missed Friday, Monday, or both on twenty separate occasions from March 2007 to September 2007; and that he used FMLA leave on three of the four Fridays prior to September 10, 2007. (Harrison Dep. 53-57). Department of Labor regulations allow an employer to seek recertification when confronted with such a pattern of using FMLA leave on Fridays and Mondays.

Because this basis creates a valid reason to ask Harrison to recertify his FMLA leave, the Court need not consider the RTA's alternative justification for requesting FMLA recertification, that Harrison had stated that his mother's condition had changed.

The RTA's September 10, 2007 letter claimed that FMLA coverage for Harrison's Friday, September 7, 2007 and Monday, September 10,2007 absences was "pending" Harrison's timely submission of the recertification paperwork from his mother's physician. (Harrison Dep. Ex. 13). Based on Harrison's failure to submit a recertification within fifteen days, the RTA delayed the continuation of his FMLA leave until he submitted recertification paperwork. As a result of not timely submitting the requested medical documentation, the RTA categorized these absences as under the Absence Control Policy and not as FMLA leave.

When an employer requests that an employee recertify for FMLA leave, "the employee must provide the requested recertification to the employer within the timeframe requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.308(d). When waiting on employees to provide FMLA certification or

recertification forms, employers are "not required to exhibit more patience than the law and [their] own rules require." *Townsend-Taylor v. Ameritech Services, Inc.*, 523 F.3d 815, 818-19 (7th Cir. 2008). Rather, if an employee fails to provide a recertification within the necessary timeframe, "the employer may delay the employee's continuation of FMLA leave." 29 C.F.R. § 825.311(b).

The RTA's September 10, 2007 recertification request and the accompanying documentation specifically instructed Harrison to submit a recertification within fifteen days, by September 26, 2007. (Harrison Dep. Ex. 14). Harrison did not submit a recertification within the requested timeframe; nor did he contact the RTA to ask for more time or to explain why he failed to submit the recertification in a timely manner. (Harrison Dep. 58-60; Tr. at 118, 248-49). Rather than submit evidence that he made a diligent, good faith effort to submit a recertification within fifteen days, Harrison testified that he waited until a convenient, previously scheduled appointment to seek recertification, without requesting an extension of time from the RTA.

Harrison waited to provide the doctor's office with the recertification paperwork, even though he knew his mother's physician typically took at least seven days to complete FMLA documentation, and even though he knew the recertification was due by September 26. (Arbitration Tr. at 129; Harrison Dep. 58-59, 70).

When Harrison provided the recertification paperwork to his mother's physician, he never asked whether the paperwork could be expedited or completed more quickly; in fact, he never even told anyone at the doctor's office that he needed to submit the documentation by a particular date. (Arbitration Tr. at 156-57; 241-42). Neither did Harrison follow up with the doctor's office regarding the recertification paperwork until after he received a termination reprimand, nearly a

week after the recertification was due back to the RTA. (Harrison Dep. 67-70; Tr. at 126; Harrison Dep. Ex. 16).

The RTA clearly had the right to delay Harrison's continuation of FMLA leave until he submitted a recertification from his mother's physician. See, e.g., *Wiseman v. United Distributive Works Council 30*, No. 08-11879, 2009 WL 4360085 (E.D. Mich. Aug. 31, 2011), *Washington v. Fort James Operating Co.*, No. CIV.99-1300-JO, 2000 WL 1673134 (D. Or. Nov. 7, 2000). What is unclear is whether the RTA could retroactively suspend FMLA certification on September 10, 2007 for leave taken on Friday, September 7, 2007 and Monday, September 10, 2007. The RTA had the right to delay his continuation of FMLA leave until Harrison did submit a recertification on October 4, 2007.

Employers may require an employee to submit a recertification every thirty days in order to continue taking FMLA leave. 29 C.F.R. § 825.308(c). The employer must give the employee at least fifteen days to submit such recertification. See 29 C.F.R. § 825.308(d). "If the employee fails to provide the recertification and continues to take leave, her leave is no longer covered under the FMLA." 29 C.F.R. § 825.311(b). *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1002 (6th Cir. 2005). Two courts have stated that when recertification papers are not timely submitted, the cessation of FMLA coverage runs from the date of the employer's recertification request. *Killian v. Yorozu Automotive Tennessee, Inc.*, 2004 WL 4737654, 5 (E.D. Tenn. 2004) (citing *Alexander v. Ford Motor Co.*, 204 F.R.D. 314 (E.D. Mich.2001)). These cases cite to 29 C.F.R. § 825.308(c) to support their determination of when FMLA coverage is revoked, but this Court finds no support for their determination in that regulation. Alternatively, it might well also be that Friday, September 7, 2007 and Monday, September 10, 2007 might properly not be counted because of Harrison's

failure to comply with the June 21, 2007 warning that notice be given 30 days in advance of doctor appointments that fall unavoidably on a Friday or Monday.

This Court need not resolve this question, however, as it suffices to note that what is clear is that the question is obscure. Absent a clearly demarcated authority, even if the Court were to determine that the RTA had no authority to not count Friday, September 7 and Monday, September 10, 2007 as days that should have been covered by the FMLA for Harrison, there is still no evidence that the RTA willfully violated any of Harrison's FMLA rights, and his claims are thus time-barred.

Neither does the Court need to reach the question of deference to the arbitrator's decision, because even without deferring to the arbitrator's findings, the RTA is entitled to summary judgment.

**IV. Conclusion**

Because Plaintiff has no evidence that could allow a jury to determine that Defendant willfully violated Plaintiff's FMLA rights, a two-year statute of limitations applies to Plaintiff's claims. Because a two-year statute of limitations applies to Plaintiff's claims, they are time-barred. Therefore, Defendant's Motion for Summary Judgment, doc. 11, is **GRANTED**. The captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, June 4, 2012.

s/Thomas M. Rose
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE